354 So.2d 620 (1977)
Errol BURNS, Plaintiff-Appellee,
v.
LAMAR-LANE CHEVROLET, INC., and General Motors Corporation, Defendants-Appellants.
No. 11672.
Court of Appeal of Louisiana, First Circuit.
December 28, 1977.
Rehearing Denied February 13, 1978.
*621 Alan J. Robert, Glynn A. Long, Donaldsonville, for plaintiff-appellee.
Kenneth Barnette, Baton Rouge, for defendant-appellee, O-C Auto Air & Parts, Herman J. & Herman A. Oufnac.
M. O'Neal Walsh, Baton Rouge, for defendant-appellee, Camper Conversion Co.
Gordon R. Crawford, Gonzales, for defendant-appellant, Lamar-Lane Chevrolet, Inc.
W. P. Macmurdo, Baton Rouge, for defendant-appellant, General Motors Corp.
Before LANDRY, SARTAIN and ELLIS, JJ.
*622 SARTAIN, Judge.
Plaintiff, Errol Burns, brought this products liability action against Lamar-Lane Chevrolet, Inc. (Lamar-Lane) and General Motors Corporation (GM) alleging that a 1975 Chevrolet van which he purchased from Lamar-Lane was redhibitorily defective. Plaintiff alternatively alleged negligence on the part of Lamar-Lane. By supplemental petition Burns added as defendants Herman A. Oufnac and Herman J. Oufnac (d/b/a O-C Auto Air & Parts) (O-C) and Camper Conversion Co., Inc., alleging negligence on their parts. Lamar-Lane third partied its co-defendants as did O-C. After a jury trial, judgment was entered for plaintiff against Lamar-Lane and GM on a finding of negligence. All other demands were rejected. Costs were assessed equally against Burns, Lamar-Lane, GM and O-C. Lamar-Lane and GM appealed. Burns answered the appeal asking that the assessment of costs against him be reversed and that the judgment be affirmed in all other respects or, alternatively, modified into a judgment in redhibition in which he would receive attorney's fees. O-C answered the appeal also asking that the taxing of costs against it be reversed. We reverse in part, amend in part and render as amended.
According to Burns' order from Lamar-Lane, the Chevrolet van in question was to have an AM-FM stereo-tape deck and a vent top. The van purchased from GM by Lamar-Lane had neither of these accessories. Lamar-Lane had the stereo installed by O-C. Burns took delivery after the installation; he was told that the vent top would later be installed. He had the car for a little over a week in which he observed no malfunctions. Lamar-Lane arranged with Camper Conversions for it to install the vent top. Burns agreed to deliver the van to Camper Conversions for this modification. While driving on the day before he was to deliver the van, Burns for the first time turned on the air conditioner and radio together. When he did so, both the air conditioner and the radio went out. He stopped at a service station and found that a fuse had blown. He replaced it. However, when the radio and air conditioner were again run simultaneously, the replacement fuse blew. After replacing this fuse Burns did not attempt to run the two appliances simultaneously. Burns did not report this problem to Lamar-Lane since he was to bring the van to Camper Conversions the next day. He brought it the next afternoon. Early the following morning an employee of Camper Conversions got into the van and drove it approximately thirty yards whereupon it burst into flames.
The van was towed to the nearest Chevrolet dealer and later taken to Lamar-Lane where it remains at the present time. Plaintiff demanded a rescission of the sale. Both Lamar-Lane and GM refused this request. This suit followed.
Lamar-Lane and GM first assert that plaintiff's redhibition action against them should be rejected because the van was not tendered for repair after the fire. C.C. Art. 2531. It has been held that such a defense is to be raised by the dilatory exception of prematurity. Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534 (La.App. 3rd Cir. 1976). If this view of the law is correct, one might argue that the defense has been waived since no exceptions were filed prior to answer. C.C.P. Art. 928. However, we need not decide whether failure to tender for repair must be raised prior to answer. Under the facts of this case, we find that Lamar-Lane was given an opportunity to repair the van. We also find that under the law GM need not have been given an opportunity to repair.
Art. 2531 requires that "[t]he seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices." [1] This article has no application to manufacturers. They are presumed to know the defects of their products. Radalec, Inc. v. Automatic Firing Corp., 228 La. *623 116, 81 So.2d 830 (1955). Therefore a manufacturer could never be a "seller who knew not the vice of the thing." Therefore whether or not there was any tender or opportunity to repair is irrelevant as to GM. Prince v. Paretti Pontiac Co., 281 So.2d 112 (La.1973) held that tender is unnecessary as a prerequisite to a redhibition action. We find that Prince is still the law as to sellers with knowledge of the vices.
We find that the stereo installation does not make Lamar-Lane a manufacturer. Lamar-Lane is in the same position as the vendor in Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974). In Spillers, a vendor who had a truck modified for pulpwood hauling by a third party, was held not to be a manufacturer. In any event, as discussed below, we find factually that the stereo installation did not cause the fire. Even were Lamar-Lane a manufacturer, it would only be presumed to know of defects in the stereo installation. Rey v. Cuccia, 298 So.2d 840 (La.1974). For the same reason O-C cannot be considered a manufacturer for the purposes of this suit.
Art. 2531 does not specifically require that the merchandise be tendered to the seller with a specific request to repair. Here, although Burns insisted that he wanted a rescission of the sale rather than a repair of his van, the van came into the possession of Lamar-Lane which had notice of the defective condition. Lamar-Lane was "bound" to repair the van. Upon its failure to do so, it became liable for the return of the purchase price. C.C. Art. 2531.
It has been stated that "[a] tender for repair is required before suit in redhibition can be instigated." Wiltz v. Dixie Auto Sales, Inc., 315 So.2d 811 (La.App. 3rd Cir. 1975). However, the cases relied on for this proposition are apparently applications of the jurisprudence prior to Prince, above. Prince rejected this jurisprudence and held that a tender was not required. Although we agree that Act 673 of 1974 was intended to overrule Prince, we do not believe that one may simply return to the earlier jurisprudence. One must instead look to the language of Art. 2531 which does not require a tender.
The jury returned a verdict in favor of Burns in the amount of $11,500.00, divided $5,750.00 against GM and $5,750.00 against Lamar-Lane. According to its response to the interrogatories, the jury based its decision solely on negligence. Such a verdict is completely unresponsive to the demands made in this suit, the instructions given, and the evidence presented. No evidence of negligence on the part of GM was presented and the only possible negligence on the part of Lamar-Lane was in not discovering the defect or in being responsible through respondeat superior for O-C's alleged negligence. Neither of these possibilities is sustained.
Apparently, the jury was simply unable to understand the instructions from the court or the verdict form. They returned twice to seek further instructions from the court. On one occasion they were informed that in the absence of privity, they could not return a verdict against GM. This is legally incorrect. Under Louisiana law a consumer may recover in redhibition against the manufacturer of a defective product despite an absence of privity between it and its dealer. Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972).
When a jury verdict is not based upon "essential and correct legal principle[s]," an appellate court is to give "no weight to the judgment of the trial court which implemented the jury verdict." Gonzales v. Xerox Corporation, 320 So.2d 163, 165 (La.1975). In such cases, "appellate review tends to involve trial de novo for all practical purposes. * * * [T]he appellate court is, in effect, a court of original jurisdiction." Higgins v. Johnson, 349 So.2d 918, 925 (La.App. 1st Cir. 1977), writs denied 351 So.2d 161, 162 (La.1977). Accordingly, we shall make our own factual determination.
Physical facts as previously outlined are basically undisputed. Because of the badly *624 burned condition of the van, none of the experts could definitely discover the cause of the fire. They could only offer their respective theories as to its probable cause.
Plaintiff's expert was George Pappas, a chemical engineer with experience in electrical fires. He was of the opinion that the most probable cause of the fire was undersized or defective wire in the ignition and air conditioning systems. He did concede on cross examination that the installation of the radio was another probable cause. It is apparent that in the context of the installation of the radio, he meant that it was another possibility.
Dr. Eugene F. Tims, a professor of electrical engineering at Louisiana State University, testified on behalf of O-C. He was of the opinion that the fire most probably began in the air speed switch. He based this opinion on the excessive damage within the switch. He found destruction of the plastic in the switch to a greater extent than would have occurred had the source of the fire been external to the switch. He also found the copper slide contact missing over at least half of the switch. Copper melts at approximately 1900" Fahrenheit. Tims stated that this temperature was required for the copper to disappear as it had done. He felt that this temperature would not have been reached in the switch unless the fire had begun with a loose connection there. He also testified that if the fire had been caused by a short in the radio wiring system the speakers would have burned out. He demonstrated in court that the speakers were in working condition after the fire.
Appearing as experts on behalf of GM were Dr. Leonard C. Adams, a former professor of electrical engineering at Louisiana State University; Orval J. Louis, Jr., an automobile dealership service manager; and Howard Davis, a General Motors area service manager.
Dr. Adams' opinion was that the fire was caused by damaged wiring resulting in a short. He stated that he found a wire which had been installed with the stereo which was stretched tightly against a clip. He opined that this caused the fire since the burning was more pronounced in that general area. He also based his opinion on the fact that Burns testified that the radio and air conditioner would simultaneously go off. He felt that this showed an inadvertent crossing of the two wiring systems, which may have led to a short.
Messrs. Louis and Davis generally agreed with Dr. Adams. Louis stated that he had never heard of a fire starting in an air conditioning switch. Davis' opinion was primarily based on the fact that the stereo and air conditioner would go out at the same time.
In evaluating expert testimony important factors are the qualifications of the experts and the facts upon which their opinion testimony is based. Middle Tennessee Council, Inc. v. Ford, 274 So.2d 173 (La.1973). We find that Drs. Tims and Adams are more qualified by education, training and experience in determining the cause of electrical fires than are the other experts who testified.
As between the two, Drs. Tims and Adams, we accept the testimony of the former for the reason that we find his explanation more plausible. It appears to us that the satisfactory working condition of the stereo speakers after the fire lends more credence to the argument that the stereo was not defectively installed than to the other theories advanced. Accordingly, we find the defect to have been in the manufacture and of such a nature as to justify the rescission of the sale. C.C. Art. 2530.
Plaintiff seeks to recover the return of the purchase price and expenses together with damages for mental anguish, inconvenience, expenses for alternate transportation, and attorney's fees. There is no question about his right to recover the return of the purchase price ($5179.22) and interest charges ($838.38) and attorney's fees. It was stipulated that if attorney's fees are allowable under the law, the sum of $2500.00 is appropriate.
*625 However, an award for mental anguish, inconvenience, and expenses for alternate transportation is another matter. While Burns did testify as to his inconvenience and the problems he had endeavoring to get either Lamar-Lane or General Motors to assume some responsibility for the fire, he offered no testimony as to the cost of alternate transportation.
We must hold that his claims for mental anguish and inconvenience are not compensable in an action in redhibition. Aiken v. Moran Motor Co., 165 So.2d 662 (La.App. 1st Cir. 1964) and Stratton-Baldwin Co., Inc. v. Brown, 343 So.2d 292 (La.App. 1st Cir. 1977).
Admittedly, our holdings in the Aiken and Stratton-Baldwin cases, above, are contrary to the decision in Hoffman v. All Star Insurance Corporation, 288 So.2d 388 (La. App. 4th Cir. 1974), writ refused 290 So.2d 909 (La.1974).
In Stratton-Baldwin, above, we held that an action in redhibition is one sounding in contract and that damages for mental anguish, inconvenience, etc., are not expenses incidental to the sale sought to be rescinded for redhibitory vices and are, therefore, not recoverable under C.C. Art. 1934 unless the contract had for its principal or exclusive object some form of intellectual gratification.
C.C. Art. 1934 was so interpreted by our Supreme Court in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976). Further, we note that all of the cases cited in and relied upon by the court in Hoffman, above, were causes of actions in tort and not contract or redhibition.
On the question of costs, we find that the trial judge abused his discretion in assessing the costs against Burns, O-C and Lamar-Lane. Ultimate liability is placed upon GM who should bear the cost of this litigation.
Accordingly, for these reasons, judgment is rendered herein in favor of the plaintiff and against Lamar-Lane Chevrolet, Inc. and General Motors Corporation, in solido, in the full and true sum of SIX THOUSAND SEVENTEEN AND 60/100 ($6017.60) DOLLARS, together with legal interest thereon from date of judicial demand, until paid;
Judgment is further rendered herein in favor of the plaintiff and against General Motors Corporation in the amount of TWENTY-FIVE HUNDRED AND 00/100 ($2500.00) DOLLARS, as reasonable attorney's fees, together with legal interest thereon from date of judicial demand, until paid;
Judgment is further rendered herein in favor of Lamar-Lane Chevrolet, Inc., as third party plaintiff, and against General Motors Corporation, third party defendant, for any sum recoverable against the former with respect to its solidary obligation with General Motors Corporation in favor of plaintiff, together with legal interest thereon from date of judicial demand, until paid;
Judgment is further rendered herein in favor of Lamar-Lane Chevrolet, Inc., third party plaintiff, and against General Motors Corporation, third party defendant, in the sum of TWENTY-FIVE HUNDRED AND 00/100 ($2500.00) DOLLARS, as reasonable attorney's fees, together with legal interest thereon from date of judicial demand, until paid;
Judgment is further rendered herein rejecting the demands of the plaintiff and third party plaintiffs against O-C and Camper Conversion, third party defendants.
All costs are assessed against General Motors Corporation.
REVERSED IN PART, AMENDED IN PART AND RENDERED.
NOTES
[1] We are in accord with the view of the Third Circuit that the language "as provided in Article 2521" is to be treated as mere surplusage. Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534, 538 (La.App. 3rd Cir. 1976).